**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>vs.<br><br>PATRICK DERONE JAMES,<br><br>                    Defendant. | Case No. 20-cr-49-CJW<br><br><br>**REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO SUPPRESS** |

_____

**TABLE OF CONTENTS**

Page

**I.    INTRODUCTION**....................................................................**2**

**II.   FINDINGS OF FACT**..............................................................**3**

**III.  DISCUSSION**........................................................................**7**

    **A.    The Parties' Positions**.................................................**7**

    **B.    Legal Standards**........................................................**9**

    **C.    Constitutionality of the Traffic Stop** .........................**10**

    **D.    Attenuation of Defendant's Statements**......................**16**

        **1.    Whether Defendant's Statements at the Scene of the Traffic Stop are Attenuated** ..........................................**19**

            **a.    Whether Miranda Warnings Were Given**....................**19**

            **b.    The Temporal Proximity Between the Alleged Constitutional Violation and the Statements**.................**19**

1

|    |    | c. | *Whether There Were Intervening Circumstances* ........... **20** |

|    |    | d. | *The Purpose and Flagrancy of any Official Misconduct* ....................................................... **21** |

|    |    | e. | *Conclusion* ..................................................... **21** |

|    | 2. | | *Whether Defendant's Statements During Officer Merritt's Police Station Interview are Attenuated* ..................................... **21** |

|    |    | a. | *Whether* **Miranda** *Warnings Were Given* ................... **21** |

|    |    | b. | *The Temporal Proximity Between the Alleged Constitutional Violation and the Statements* ................ **22** |

|    |    | c. | *Whether There Were Intervening Circumstances* ........... **22** |

|    |    | d. | *The Purpose and Flagrancy of any Official Misconduct* ....................................................... **22** |

|    |    | e. | *Conclusion* ..................................................... **22** |

| **IV.** | **CONCLUSION** ............................................................................. **23** |

## I.    INTRODUCTION

On June 16, 2020, the Grand Jury charged Defendant with one count of Possession of a Firearm by a Felon in violation of 18 U.S.C. Sections 922(g)(1) and 924(a)(2). (Doc. 2.)

The matter before the Court is Defendant's Motion to Suppress. (Doc. 23.) The Honorable Charles J. Williams, United States District Court Judge, referred the motion to me for a Report and Recommendation. The Government timely filed a Resistance. (Doc. 25.) I held a hearing on Wednesday, June 16, 2021. (Doc. 29.)

2

At the hearing, Defendant offered the following exhibits in support of the motion to suppress, which were admitted without objection:

A. A Cedar Rapids Police Department ("CRPD") Report by Officer Emily Machula (Def. Ex. A; Doc. 23-3) and

B. A CRPD Report by Officer Michael Merritt (Def. Ex. B; Doc. 23-4).

The Government called two witnesses:

- CRPD Officer Emily Machula
- CRPD Officer Michael Merritt

For the following reasons, I respectfully recommend that the Court **deny Defendant's Motion to Suppress.**

## II.    FINDINGS OF FACT

On March 9, 2020, Officer Emily Machula[1] received a stolen vehicle report from Robin Cooper who personally appeared at the police station. Mr. Cooper told Officer Machula that he rented a gray 2019 Dodge Grand Caravan with Iowa license plate IVV652 from Enterprise, a car rental company, on February 25, 2020. Mr. Cooper said that he used the vehicle for two days and then lent it to a man known as "Pacman" on February 27, 2020. Mr. Cooper said that Pacman asked Mr. Cooper to use the vehicle. Mr. Cooper agreed to loan Pacman the vehicle and then Mr. Cooper gave Pacman the keys. Mr. Cooper said that on March 2, 2020, Pacman wired funds to Mr. Cooper's account to extend the rental arrangement. Mr. Cooper said that his rental agreement with Enterprise terminated on March 2, 2020. Mr. Cooper told Officer Machula that he attempted to contact Pacman via telephone multiple times, but Pacman's phone had been disconnected. After his attempts to contact Pacman, Mr. Cooper contacted Enterprise to report the situation. Enterprise directed Mr. Cooper to contact CRPD to report the

---

[1] Officer Machula has been a police officer with CRPD for two years.

vehicle as stolen. The vehicle was valued at $30,000. After Mr. Cooper reported the situation to Officer Machula, Officer Machula documented the report and entered the vehicle as stolen in the National Crime Information Center ("NCIC") computer system so officers could contact Enterprise if they discovered the vehicle.

On March 21, 2020, Officer Michael Merritt[2] reviewed the case, noticed that the stolen vehicle report remained active, and recognized the name Pacman as the street name of Defendant. Officer Merritt testified that he was familiar with the name, and its connection to Defendant, because Defendant was well known in the community and that Officer Merritt was familiar with prior police investigations involving Defendant. Officer Merritt knew that Defendant was wanted by local authorities to serve 15 days under a mittimus, although the local authorities adopted a policy in the wake of the COVID-19 pandemic to not take custody of individuals wanted under a mittimus.

Officer Merritt drove to Defendant's last known registered address and saw a gray Dodge Grand Caravan matching the description of the stolen vehicle. Officer Merritt reported that the vehicle had Texas license plate LYB4189 attached to it, not an Iowa license plate, and also that the vehicle identification number ("VIN") matched the VIN of the stolen vehicle. Officer Merritt discovered that both the Texas and Iowa license plates were valid for the same vehicle, although the vehicle was reported stolen only under the Iowa license plate number. Officer Merritt attempted to call Enterprise, using two different phone numbers to verify the status of the vehicle but he was unable to reach a representative.

After he attempted to contact Enterprise, Officer Merritt noticed that the vehicle was no longer in the driveway. Concerned that he could no longer see the potentially stolen vehicle, Officer Merritt drove to find the vehicle, spotted it making a westbound

---

[2] Officer Merritt has been a police officer serving the City of Cedar Rapids for six years. He previously served for approximately 1.5 years at the Chicago Police Department.

turn, and then initiated a traffic stop. Officer Merritt testified that the basis for his stop was his belief that the vehicle was stolen. Officer Merritt informed the law enforcement dispatcher ("dispatch") that he would be performing a traffic stop on a potentially stolen vehicle. He provided dispatch the Texas license plate number. Officer Merritt stated that he did not perform a felony stop, but rather an ordinary traffic stop, on the vehicle due to the uncertainty surrounding the status of the Texas license plate and because Mr. Cooper admitted to lending the vehicle to another person. As he approached the vehicle, Officer Merritt noted that he smelled marijuana originating from inside the vehicle. Defendant, Olivia Evans, and their two daughters were in the vehicle. Officer Merritt informed them that he stopped their vehicle because it was reported stolen. Defendant told Officer Merritt that his uncle, Mr. Cooper, rented the vehicle and that Defendant was paying Mr. Cooper to use the vehicle. Defendant also admitted to Officer Merritt that he and Ms. Evans had smoked marijuana in the vehicle earlier that day.[3] Officer Merritt informed Defendant that he would not take Defendant into custody at that moment, even though Defendant was meant to spend 15 days in jail under the mittimus.

Additional officers arrived on the scene and Officer Merritt informed them that he smelled marijuana in the vehicle and that he knew Defendant had a criminal history with firearms. Officer Merritt then ran the vehicle's VIN number, confirmed the vehicle was reported stolen, asked dispatch to run the Texas license plate number, and confirmed that the Texas plate was registered to the same vehicle as the Iowa plate that was reported stolen. Officer Merritt was not personally aware of another case where license plates originating from two different states were valid and registered to a vehicle with the same

---

[3] The record does not show what other potentially incriminating statements Defendant made at the scene of the arrest. Nevertheless, Defendant has moved to suppress all the statements made at the scene from the inception of the traffic stop.

VIN. Officer Merritt again called Enterprise, gave the phone to another officer to speak with a representative, and began conducting a search of the vehicle.

The officers discovered marijuana in the vehicle and a loaded teal Glock 43 with an obliterated serial number under Defendant's seat. During the officers' search of the vehicle, Officer Merritt conducted a pat down of Defendant to confirm whether Defendant had firearms on his person. Officer Merritt took Defendant into custody. Officer Merritt asked dispatch to confirm whether Defendant was issued a permit to carry weapons. Dispatch confirmed that Defendant was not issued a permit to carry weapons. Officer Merritt then requested that dispatch print a summary of Defendant's criminal history for the purpose of a firearms investigation. Both Defendant and Ms. Evans were transported to the police station for interviews.

Officer Merritt first interviewed Ms. Evans. Officer Merritt told Ms. Evans that she was not being charged, but that he wanted to speak with her about the events that day and the events leading up to the traffic stop. Officer Merritt read Ms. Evans her *Miranda* rights. Ms. Evans told Officer Merritt that she understood her rights and consented to speaking with Officer Merritt by signing the CRPD Waiver of Rights form. During her interview, Evans told Officer Merritt that she and Defendant took possession of the vehicle three weeks prior and that Defendant paid Mr. Cooper to use the vehicle. Ms. Evans said that the couple paid Mr. Cooper approximately $300 per week to use the vehicle. Ms. Evans claimed possession of a small bag of marijuana found in the vehicle and noted that she uses on occasion. She further denied seeing the firearm in the vehicle, seeing Defendant with the firearm, or ever handling the firearm.

Officer Merritt then interviewed Defendant. Officer Merritt read Defendant his *Miranda* rights. Defendant informed Officer Merritt that he understood his rights, but Defendant refused to sign the CRPD "Waiver of Rights" form. Defendant later told Officer Merritt that he arranged with Mr. Cooper weeks earlier to use the vehicle in

6

exchange for regular payments of about $500 every 1.5 weeks. Defendant claimed that he did not know the vehicle was reported stolen and that Mr. Cooper did not inform him that he had reported the vehicle stolen. Defendant again admitted to smoking marijuana in the vehicle earlier in the day and admitted that the marijuana found in the vehicle belonged to him. Defendant said that he smoked marijuana every day, most commonly multiple times per day. Defendant then claimed ownership of the firearm. He told Officer Merritt that he found the firearm in an alley some weeks previously. He noted that he carried the firearm from time to time for protection, and that he carried the firearm that day because he was with his family. Defendant said that he knew the gun was loaded. Defendant said that he did not conceal the firearm on his person when Officer Merritt approached the vehicle earlier, that he had placed the firearm under his seat when he was smoking marijuana earlier in the day, and that Ms. Evans did not know of, see, or touch the firearm. Defendant said that he had not noticed that the serial number on the firearm had been obliterated.

Following the interviews, Ms. Evans was released without charges and Defendant was booked into the Linn County Jail. At Enterprise's request, the vehicle was towed. The license plates were removed from it because Enterprise had no record of Texas plates belonging to the vehicle even though Officer Merritt confirmed that the NCIC system record showed that both the Iowa and Texas plates were registered to the same vehicle owned by Enterprise.

Additional facts will be discussed as necessary.

### III.    DISCUSSION

#### A.    The Parties' Positions

The parties agree that if I find the initial traffic stop constitutional, the custodial statements Defendant made following the stop are also constitutional evidentiary findings. The controversial issue giving rise to this motion is whether the initial traffic stop Officer

7

Merritt conducted was constitutional. Specifically, the question here is whether Officer Merritt had reasonable suspicion or probable cause to stop the vehicle.

Defendant argues that Officer Merritt lacked probable cause or reasonable suspicion to stop the vehicle. Defendant's principal argument is that no theft occurred here, nor any alternatives of theft under Iowa Code Section 714.1, the Iowa statute relating to theft. Defendant claims that this case is a civil contract issue, not a criminal theft issue, because Defendant was operating under a verbal rental contract with Mr. Cooper that did not specify a date of contract termination. Defendant further argues that Mr. Cooper voluntarily loaned the vehicle to Defendant under the terms of the verbal contract and that there is no evidence that Defendant intended to deprive Mr. Cooper or Enterprise of the vehicle. As a result, Defendant argues that the information available to Officer Merritt at the time he stopped the vehicle did not rise to the level of reasonable suspicion or probable cause. As such, Defendant further argues, the statements Defendant made following the traffic stop are fruits of the poisonous tree and must be suppressed because they were made as a direct result of an unconstitutional search.

The Government resists the motion and argues that Officer Merritt had reasonable suspicion or probable cause to believe that a theft occurred, and that, as a result, the traffic stop was constitutional. The Government argues that the evidence supports a conclusion that Defendant committed a theft under Iowa Code Section 714.1. The Government further argues that even if Officer Merritt was legally or factually incorrect about whether the vehicle was stolen, the traffic stop was still constitutional because his mistake was objectively reasonable.

The Government asserts that, even if I find the initial traffic stop was unconstitutional for lack of reasonable suspicion or probable cause, Defendant's custodial statements should not be suppressed because they were made voluntarily and were sufficiently attenuated from the stop.

***B.   Legal Standards***

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.   "The Fourth Amendment prohibits unreasonable searches and seizures by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (citing *United States v. Cortez*, 449 U.S. 411, 417 (1981); *Terry v. Ohio*, 392 U.S. 1, 9 (1968)) (internal quotations omitted).   "A traffic stop constitutes a seizure for purposes of the Fourth Amendment and therefore must be supported by probable cause or reasonable suspicion." *United States v. Givens*, 763 F.3d 987, 989 (8th Cir. 2014).   Reasonable suspicion is based on the totality of the circumstances and requires a "particularized and objective basis" for suspecting legal wrongdoing before a stop can be justified.   *United States v. Patrick*, 776 F.3d 951, 954 (8th Cir. 2015) (quoting *Cortez*, 449 U.S. at 417).   A hunch does not constitute reasonable suspicion to justify a stop.   *Wilson v. Lamp*, 901 F.3d 981, 986 (8th Cir. 2018) (citing *Terry*, 392 U.S. at 27).   However, "[e]ven an officer's incomplete initial observations may give reasonable suspicion for a traffic stop." *Givens*, 763 F.3d at 989 (quoting *United States v. Hollins*, 685 F.3d 703, 706 (8th Cir. 2012)).

Officers may conduct a traffic stop for probable cause or reasonable suspicion when "the facts and circumstances within the arresting officer's knowledge were sufficient to warrant a prudent person's belief that the suspect had committed or was committing an offense." *United States v. Magness*, 69 F.3d 872, 874 (8th Cir. 1995) (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)); *see United States v. Smart*, 393 F.3d 767, 770 (8th Cir. 2005) ("The determination of whether probable cause or reasonable suspicion existed is not to be made with the vision of hindsight, but instead by looking to what the officer reasonably knew at the time.") (alteration, citation, and internal quotation

marks omitted). Even innocuous actions may give rise to reasonable suspicion under the totality of the circumstances. *United States v. Condelee,* 915 F.2d 1206, 1209 (8th Cir. 1990) (opining that "there could be 'circumstances in which wholly lawful conduct might justify the suspicion that criminal activity was afoot'") (quoting *Reid v. Georgia,* 448 U.S. 438, 441 (1980)).

## C.  *Constitutionality of the Traffic Stop*

The question under review is whether Officer Merritt had reasonable suspicion or probable cause sufficient to perform the initial traffic stop of the vehicle. I find that Officer Merritt did have reasonable suspicion sufficient to conduct the traffic stop for the following reasons.

Iowa Code Section 714.1 states that

> [a] person commits theft when the person does any of the following:
> 1. Takes possession or control of the property of another, or property in the possession of another, with the intent to deprive the other thereof.
> 2. Misappropriates property which the person has in trust, or property of another which the person has in the person's possession or control, whether such possession or control is lawful or unlawful, by using or disposing of it in a manner which is inconsistent with or a denial of the trust or of the owner's rights in such property, or conceals found property, or appropriates such property to the person's own use, when the owner of such property is known to the person.
>     a. Failure by a bailee or lessee of personal property to return the property within seventy-two hours after a time specified in a written agreement of lease or bailment shall be evidence of misappropriation.
>     b. If a time is not specified in the written agreement of lease or bailment for the expiration or termination of the lease or bailment or for the return of the personal property, failure by a lessee or bailee to return the property within five days after proper notice to the lessee or bailee shall be evidence of misappropriation. For the purposes of this paragraph, "proper

10

> notice" means a written notice of the expiration or termination of the lease or bailment agreement sent to the lessee or bailee by certified or restricted certified mail at the address of the lessee or bailee specified in the agreement. The notice shall be considered effective on the date of the mailing of the notice regardless of whether or not the lessee or bailee signs a receipt for the notice.
>
> .  .  .
>
> 5. Takes, destroys, conceals or disposes of property in which someone else has a security interest, with intent to defraud the secured party.

Although the Defendant argues that none of criminal theft statute applies to this case, the Government argues that the evidence supports the reasonable suspicion that Defendant had the intent to permanently deprive both Mr. Cooper and Enterprise of the vehicle Officer Merritt stopped. (Doc. 23-2 at 5; Doc. 25-1 at 6.) The Government gave five reasons to support this suspicion: (1) the unusual circumstances resulting in Defendant's arrangement with Mr. Cooper to use the vehicle, (2) Defendant's failure to return the vehicle at the end of Mr. Cooper's rental period with Enterprise, (3) the fact that the vehicle was discovered 12 days after the vehicle was due to be returned to Enterprise, (4) Defendant ceasing contact with Mr. Cooper, and (5) the discovery of the license plates from a state Defendant was not known to reside in. (Doc 25-1 at 6-7.)

The Government further argues that under Iowa Code Section 714.7, the evidence supports a finding that neither Enterprise nor Mr. Cooper consented to Defendant's continued possession of the vehicle. Section 714.7 provides that if a person takes possession of another person's vehicle without the owner's consent, the person is guilty of an aggravated misdemeanor.

> Any person who shall take possession or control of any . . . self-propelled vehicle, . . . [or] the property of another, without the consent of the owner of such, but without the intent to permanently deprive the owner thereof, shall be guilty of an aggravated misdemeanor.

11

Iowa Code § 714.7. Defendant argues that he had the consent of Mr. Cooper to possess the vehicle. The difference between Sections 714.1 and 714.7 is that Section 714.1 requires a person's intent to permanently deprive the owner of the vehicle while Section 714.7 does not.

Whether Defendant could ultimately be convicted of a theft or possession of the vehicle is not the point of to this analysis. The focus here is the information Officer Merritt was aware of at the time he stopped the vehicle. The information available to Officer Merritt prior to the stop is determinative in the analysis of whether Officer Merritt had reasonable suspicion sufficient to initiate a constitutionally valid traffic stop under the belief that a crime was being or had been committed.

The record indicates that before Officer Merritt conducted the traffic stop he was aware that (1) a 2019 gray Dodge Grand Caravan with Iowa license plates was reported stolen by the bailee at the insistence of the vehicle's owner, (2) a man called "Pacman" was in possession of the stolen vehicle, (3) "Pacman" was the commonly known alias of Defendant, (3) Defendant had prior criminal history, including criminal history with firearms, (4) CRPD had a record of Defendant's last known address, (5) a gray Dodge Grand Caravan matching the description of the stolen vehicle sat in Defendant's driveway, (6) the Texas license plate attached to the vehicle in Defendant's driveway was registered to the same VIN as the Iowa license plate that was reported stolen, and (7) that the vehicle was no longer sitting in the driveway when Officer Merritt returned after attempting to contact Enterprise.

I find that under the totality of the circumstances, the facts are sufficient to create a reasonable suspicion of theft or, at least, Defendant's possession of the vehicle without consent because the vehicle was reported stolen at the insistence of the vehicle's owner. Even if the driver and passengers of a stolen vehicle are wholly innocent of any

underlying intent to deprive the owner of possession, the vehicle itself is evidence of a possible crime. *United States v. Mosley*, 878 F.3d 246, 253 (8th Cir. 2017) (holding that an officer had reasonable suspicion to perform a traffic stop on a vehicle that matched the description of a vehicle involved in a bank robbery even when the driver and number of passengers did not match the description and number of bank robbers); *see also United States v. Brooks*, 982 F.3d 1177, 1180 (8th Cir. 2020) (holding that officers had reasonable suspicion sufficient to conduct a traffic stop after their license plate reader alerted them to a reportedly stolen vehicle driving down the interstate).

Furthermore, even an anonymous tip, corroborated by police prior to a traffic stop, alone can give rise to reasonable suspicion sufficient to perform a traffic stop. *United States v. Spotts*, 275 F.3d 714, 720 (8th Cir. 2002) (citing *Alabama v. White*, 496 U.S. 325, 329 (1990); *Florida v. J.L.*, 529 U.S. 266. 270 (2000))*; see also United States v. Kent*, 531 F.3d 642, 650 (8th Cir. 2008) (holding that an anonymous tip provided reasonable suspicion sufficient for a police officer to perform a traffic stop when the officer spotted a vehicle and driver matching the description given in the tip and driving in the same geographic area the tipster reported) (citing *Adams v. Williams*, 407 U.S. 143, 146 (1972)). Here, the stop was not based on an anonymous tip but, rather, an in-person report by a bailee on behalf of the vehicle's owner. The vehicle was reported stolen by Mr. Cooper, at the instruction of Enterprise. Mr. Cooper and Enterprise representatives remained available to officers investigating their report of the stolen vehicle. The information available to Officer Merritt prior to the traffic stop in this case was sufficient to constitute reasonable suspicion.

The operative part of Iowa Code Section 714.1 provides that a person commits theft if that person "[m]isappropriates . . . property of another which the person has in the person's possession or control, whether such possession or control is lawful or unlawful, by using or disposing of it in a manner which is inconsistent with or a denial

of the trust or of the owner's rights in such property . . ."   Here, there was at least reasonable suspicion to believe the occupants of the vehicle were engaged in this crime. Defendant confuses the elements of the offense with statutorily approved evidence of those elements.   (Doc. 23-2 at 6.)   Subsections (a) and (b) of Iowa Code Section 714.1(2)(a) are not "conditions" the prosecution would have to prove to "establish theft" as Defendant argues.   (*Id.*)   Instead, the subsections upon which Defendant relies are merely possible ways to prove misappropriation.

Therefore, Officer Merritt initiated the traffic stop with reasonable suspicion.

I further find that even if Officer Merritt initiated the traffic stop under an incorrect belief that the vehicle was stolen and that a theft had occurred, Officer Merritt's mistake was objectively reasonable.  "Mistakes of law or fact, if objectively reasonable, may still justify a valid stop."  *United States v. Williams*, 929 F.3d 539, 544 (8th Cir. 2019) (quoting *Hollins*, 685 F.3d at 706).   "[I]n mistake cases the question is simply whether the mistake, whether of law or of fact, was an objectively reasonable one."  *Smart*, 393 F.3d at 770; *accord Heien v. North Carolina*, 574 U.S. 54 (2014) (stating that the Fourth Amendment allows for constitutionally valid searches and seizures based on reasonable mistakes of law and fact).  This determination "is not to be made with the vision of hindsight, but instead by looking to what the officer reasonably knew at the time."  *Smart*, 393 F.3d at 770 (internal citation omitted).

Reviewing again the information that Officer Merritt had available prior to initiating the traffic stop, I find that if Officer Merritt made a mistake of law or fact that led to initiating the vehicle stop, it was an objectively reasonable one.  Defendant argues that it could not have been an objectively reasonable mistake because there is no evidence of a written agreement with a specified termination date whereby Defendant was supposed to return the vehicle to Mr. Cooper or Enterprise. Defendant's argument concludes that, without a written instrument or evidence of an agreement showing a specific date of

14

termination, Defendant's continued use of the vehicle was within the terms of Defendant's agreement with Mr. Cooper and could, therefore, not be theft under Iowa law. I disagree with Defendant. As stated above, the absence of a written agreement or date of termination is not fatal to a conviction for theft under these circumstances, much less to a reasonable belief that a crime had been committed. Therefore, even if Officer Merritt initiated the traffic stop under a mistake of law or fact, the lack of a written instrument or evidence showing a verbal agreement on a contract termination date does not nullify a determination that Officer Merritt's potential mistake was objectively reasonable. As a result, I find that, even if Officer Merritt's traffic stop was initiated under a mistake of law or fact, the mistake was a reasonable one.

I find the traffic stop initiated by Officer Merritt constitutional. Officer Merritt had reasonable suspicion sufficient to initiate the stop. Even if Officer Merritt made a mistake of law or fact in his decision to initiate the stop, the mistake was objectively reasonable. Therefore, the evidence collected as a result of the stop and the statements Defendant made following the stop are not fruits of the poisonous tree. *See Wong Sun v. United States*, 371 U.S. 471, 487 (1963).

Defendant only contests the constitutionality of the initial stop. Nevertheless, I further find that Officer Merritt had probable cause to search the vehicle after smelling marijuana. *United States v. Beard*, 708 F.3d 1062, 1065 (8th Cir. 2013) (citing *United States v. Peltier*, 217 F.3d 608, 610 (8th Cir. 2000) ("The smell of marijuana in a vehicle can establish probable cause to search the vehicle for drugs"). Incident to the search, officers discovered marijuana and Defendant's firearm

Therefore, I recommend that Defendant's Motion to Suppress the firearm, marijuana, and statements collected as a result of the traffic stop be denied. If, however, the Court concludes the stop was unconstitutional, then Officer Merritt would not have been in a position to smell the marijuana and probable cause would not have escalated to

the point where the vehicle search was justified and the evidence of that search must be suppressed as products of an illegal search. Defendant's statements will be addressed separately below.

D.    **Attenuation of Defendant's Statements**

Although I found the traffic stop constitutional, if the District Court were to disagree with me, Defendant's statements following the stop may have to be suppressed. Therefore, I will also address whether Defendant's statements following the stop must be suppressed if the District Court finds the stop unconstitutional.

Evidence obtained as a result of an unconstitutional search or seizure must be suppressed as well as any evidence later discovered to be an illegal "fruit of the poisonous tree." *Segura v. United States*, 468 U.S. 796, 804 (1984) (citing *Wong Sun*, 371 U.S. at 484). "Any evidence secured through an unreasonable, hence illegal, search and seizure may not be used in a federal prosecution, nor may the fruit of such tainted evidence be admitted against the defendant whose privacy rights were originally violated." *United States v. Conner*, 948 F. Supp. 821, 829 (N.D. Iowa 1996) (citing *Weeks v. United States*, 232 U.S. 383 (1914); *Wong Sun*, 371 U.S. at 484-88). However, the evidence must be suppressed only if the "illegality is at least a but-for cause of obtaining the evidence." *United States v. Riesselman*, 646 F.3d 1072, 1079 (8th Cir. 2011) (quoting *United States v. Olivera-Mendez*, 484 F.3d 505, 511 (8th Cir. 2007)).

Statements that are sufficiently attenuated from the original taint need not be suppressed. *See id.* at 1080. In *Riesselman*, a defendant's Fourth Amendment rights were violated when officers searched his person while conducting a search of his home pursuant to a valid search warrant that did not authorize searches of persons. *Id.* at 1075. The officers found contraband on the defendant's person. The defendant was given a *Miranda* warning and said he would speak to officers and made

16

incriminating statements. *Id.* The defendant sought to suppress the statements he made as fruits of the poisonous tree. *Id.* at 1079. The prosecution conceded that the original search of the defendant violated his right to be free from unreasonable searches and seizures. *Id.* The Eighth Circuit affirmed the district court's holding that the defendant offered "no convincing evidence to show he was influenced by the finding of drugs on his person to make incriminating statements to the officers." *Id.* *Riesselman* reasoned that the defendant freely spoke with the officer about legal issues beyond the contraband that was found on his person. *Id.* at 1079-80. Based on this evidence, the court held that the defendant "failed the but-for test because he did not provide sufficient evidence to prove a nexus between the illegal search of his person and his statements made to the officers" and affirmed the district court's decision. *Id.* at 1080.

The first issue is whether there was a sufficient factual nexus between the constitutional violation and the challenged evidence. *See United States v. Yorgensen*, 845 F.3d 908, 913 (8th Cir. 2017) (citation omitted). The alleged constitutional violation here was the traffic stop conducted by Officer Merritt, which constitutes a seizure under the Fourth Amendment. *Givens*, 763 F.3d at 989.

I find that the traffic stop here was the but-for cause of Defendant's statements, and that there was a sufficient factual nexus between the alleged Fourth Amendment violation and Defendant's statements. But for Officer Merritt initiating the traffic stop, Defendant would not have been in a position to speak with Officer Merritt at all. In contrast to *Riessleman*, Defendant spoke to Officer Merritt about the marijuana and gun that officers discovered, and he spoke about background related to Defendant's use of the vehicle. *Contra Riesselman*, 646 F.3d at 1079 (affirming the district court's decision on defendant's motion to suppress and noting that the district court found no evidence that defendant "would not have spoken to the officers if the drugs had not been discovered"

during the illegal search of his person). Even though I find that the traffic stop was the but-for cause of Defendant's statements, I will continue to the second part of the analysis because Defendant's statements may not be suppressed if they were sufficiently attenuated from the traffic stop.

"The second question is whether the attenuation doctrine applies." *Yorgensen*, 845 F.3d at 914. Evidence is admissible when the connection between the constitutional violation and the evidence is "remote or has been interrupted by some intervening circumstance." *Id.* (citing *Utah v. Strieff*, –– U.S. ––, 136 S. Ct. 2056, 2061, (2016)). To show that statements after an illegal search or seizure were voluntary to purge the taint, courts consider (1) whether *Miranda* warnings were given, (2) the "temporal proximity" between the constitutional violation and the statements, (3) intervening circumstances, and (4) the "'purpose and flagrancy of the official misconduct.'" *Riesselman*, 646 F.3d at 1080 (quoting *United States v. Lakoskey*, 462 F.3d 965, 975 (8th Cir. 2006)). *Riesselman* held that even if the district court had erred in finding no nexus between the Fourth Amendment violation and the defendant's later statements, it would have still affirmed because the government also showed that the statements were sufficiently attenuated from the constitutional violation that they were voluntary. *See id.* at 1081.

Defendant moves to suppress his statements made during the traffic stop and during his custodial interview at the police station. (Doc. 23-1 at 1.) The statements made during the traffic stop and the statements made during the custodial interview are separate and distinct.

The Government argues that even if the traffic stop was unlawful, Defendant's statements during the custodial interview at the police station should not be suppressed because they are attenuated and were made voluntarily. (Doc. 25-1 at 8.)

I will address the two attenuation analyses in turn.

### 1. Whether Defendant's Statements at the Scene of the Traffic Stop are Attenuated

#### a. Whether **Miranda** *Warnings Were Given*

The record indicates that Defendant was not *Mirandized* until immediately before his custodial interview with Officer Merritt at the police station. Defendant was not read his *Miranda* rights at the scene of the traffic stop.

Police officers are required to inform persons who have been arrested of their *Miranda* rights prior to subjecting them to custodial questioning. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). Here, there is no allegation of Fifth Amendment violation. Thus, a determination of whether Defendant was, in fact, in custody during the questioning is not essential to the determination. Rather, the provision of *Miranda* warnings regardless of whether Defendant was in custody could serve to attenuate whatever statements were made. Here, Defendant was not read his *Miranda* rights prior to making statements at the scene of the traffic stop. Therefore, this factor weighs against attenuation.

#### b. The Temporal Proximity Between the Alleged Constitutional Violation and the Statements

When addressing temporal proximity, a short time between the constitutional violation and the statement may be enough to indicate that the statement was voluntary if other circumstances indicate the statement was "sufficiently an act of free will to purge the primary taint." *United States v. Palacios-Suarez*, 149 F.3d 770, 772-73 (8th Cir. 1998) (holding that consent was sufficiently an act of free will to purge the taint of the initial stop where the officer asked the defendant several times if he could search the vehicle nine minutes after the initial stop) (quotation omitted); *United States v. Herrera-Gonzalez*, 474 F.3d 1105, 1112 (8th Cir. 2007) (assuming defendant's consent was given

only ten minutes after illegal stop does not "compel the conclusion that the consent was insufficient to purge the taint" without analyzing other factors).

On this factor, the court analyzes whether the statements were made "immediately on the heels" of a constitutional violation, *see United States v. Lakoskey*, 462 F.3d 965, 975 (8th Cir. 2006), *as amended on reh'g* (Oct. 31, 2006) (quoting *United States v. Duchi*, 906 F.3d 1278, 1285 (8th Cir. 1990)), or whether the defendant had time to pause "to contemplate his situation and reconsider his decision to [provide incriminating statements.]" *United States v. Hernandez-Hernandez*, 384 F.3d 562, 565 (8th Cir. 2004); *Yorgensen,* 845 F.3d at 914 (citing *Hernandez-Hernandez*, 384 F.3d at 565). Defendant made statements at the scene of the traffic stop, before and after the vehicle was searched. If the District Court finds the initial traffic stop unconstitutional, Defendant's statements at the scene of the stop would have been made "immediately on the heels" of a constitutional violation. *Lakoskey*, 462 F.3d at 975 (internal citation omitted). This factor weighs against attenuation.

### c.     Whether There Were Intervening Circumstances

A change of location or questioning by a different person from the one who committed the constitutional violation constitute intervening circumstances. *Hernandez-Hernandez*, 384 F.3d at 566; *Yorgensen,* 845 F.3d at 914 (citing *Hernandez-Hernandez*, 384 F.3d at 566); *see also United States v. Griggs*, No. 19-CR-2062-CJW-MAR, 2020 WL 7079136, at *19 (N.D. Iowa Dec. 3, 2020) (citing *Strieff*, 136 S. Ct. at 2062) (discovering the suspect had an outstanding warrant "entirely unconnected with the stop" was an intervening circumstance); *Segura*, 468 U.S. at 814 (obtaining warrant "wholly unconnected with the [illegal] entry" was an intervening circumstance). There were no intervening circumstances between the initial traffic stop and Defendant's statements at the scene of the traffic stop. Officer Merritt initiated the traffic stop and questioned Defendant. There was no change in location during the traffic stop giving rise to an

intervening circumstance prior to Defendant's interview at the police station. This factor weighs against attenuation.

### d. The Purpose and Flagrancy of any Official Misconduct

Finally, the purpose of Officer Merritt's conduct was to recover what he believed to be a stolen vehicle. He operated under a reasonable belief that his actions were within his duties as a police officer. This was not flagrant behavior nor official misconduct. This factor weighs in favor of attenuation.

### e. Conclusion

Three factors weigh against attenuation. Although Officer Merritt's behavior was not flagrant, and nor do his actions constitute official misconduct, that single factor does not outweigh the remaining three factors. Therefore, I find that the statements Defendant made prior to his interview at the police station are not attenuated from the original alleged constitutional violation.

Accordingly, if the District Court finds that Officer Merritt's traffic stop was unconstitutional and the "but-for" cause of Defendant's custodial statements, the statements Defendant made prior to his custodial interview at the police station should be suppressed because they were not attenuated.

### 2. Whether Defendant's Statements During Officer Merritt's Police Station Interview are Attenuated

### a. Whether Miranda Warnings Were Given

The record indicates that Officer Merritt read Defendant his *Miranda* rights, that Defendant followed along, reading his rights from a document while Officer Merritt recited them to Defendant. Although Defendant refused to sign the CRPD Waiver of Rights form, Defendant was *Mirandized*. Defendant has asserted no argument that the *Miranda* warning was inadequate. Therefore, this factor weighs in favor of attenuation.

### b. The Temporal Proximity Between the Alleged Constitutional Violation and the Statements

Approximately two hours passed between the traffic stop and Officer Merritt's custodial interview of Defendant at the police station. During that time, Defendant was waiting in an interview room while Ms. Evans was being interviewed. Defendant had time to pause "to contemplate his situation and reconsider his decision to [provide incriminating statements.]" *Hernandez-Hernandez*, 384 F.3d at 565. This factor weighs in favor of attenuation.

### c. Whether There Were Intervening Circumstances

I find that, although Defendant was interviewed by the same officer who conducted the traffic stop, the change of location from the location of the traffic stop to the police station was an intervening circumstance. *Id.* at 566; *Yorgensen*, 845 F.3d at 914 (citing *Hernandez-Hernandez*, 384 F.3d at 566). This factor weighs in favor of attenuation.

### d. The Purpose and Flagrancy of any Official Misconduct

Finally, to reiterate, the purpose of Officer Merritt's conduct was to recover what he believed to be a stolen vehicle. He operated under a reasonable belief that his actions were within his duties as a police officer. This was not flagrant behavior nor official misconduct. This factor weighs in favor of attenuation.

### e. Conclusion

All four factors weigh in favor of attenuation. Therefore, I find that the statements Defendant made during his interview at the police station are attenuated from the original alleged constitutional violation.

Accordingly, if the District Court finds that Officer Merritt's traffic stop was unconstitutional and the "but-for" cause of Defendant's statements, the statements Defendant made during his custodial interview at the police station should not be suppressed because they were attenuated.

## IV.    CONCLUSION

For the reasons set forth above, I respectfully recommend the District Court **DENY** Defendant's Motion to Suppress.  **(Doc. 23.)**

Objections to this Report and Recommendation in accordance with 28 U.S.C. Section 636(b)(l) and Fed. R. Crim. P. 59(b) must be filed within fourteen (14) days of the service of a copy of this Report and Recommendation.  Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections.  *See* Fed. R. Crim. P. 59.  Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein.  *United States v. Wise,* 588 F.3d 531, 537 n.5 (8th Cir.  2009).

**DONE AND ENTERED** at Cedar Rapids, Iowa, this 25th day of June, 2021.

Mark A. Roberts, United States Magistrate Judge
Northern District of Iowa

23